**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| GARY WEINREICH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC., a California corporation,;TOYOTA MOTOR CORPORATION., a Japanese corporation; TOYOTA MOTOR ENGINEERING AND MANUFACTURING NORTH AMERICA, INC.,<br><br>Defendants. | Case No.  2:18-cv-3294-RMG<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Gary Weinreich ("Plaintiff"), individually and on behalf of all others similarly situated ("Plaintiffs"), upon personal knowledge of the facts pertaining to themselves and on information and belief as to all other matters, by and through undersigned counsel, hereby brings this Class Action Complaint against Defendants Toyota Motor Sales, U.S.A., Inc., Toyota Motor Corporation, and Toyota Motor Engineering and Manufacturing North America, Inc., collectively ("Toyota" or "Defendants") and allege as follows:

## NATURE OF THE CASE

1. The frames for certain model year Toyota vehicles are prone to excessive, premature rust corrosion because the frames were not properly prepared and treated against rust corrosion when they were manufactured. The model years at issue in this Class Action complaint are the (2005 to 2011) Toyota 4- Runners.  The Defendants also manufactured other vehicles that had the same or

substantially the same defect.  However, Toyota 4-Runners are the only vehicle included in this

claim. Other Toyota Vehicles are included in the complaint to show that the Defendants had

knowledge and notice of the defect.  They are:

> A. 2005 to 2010 Toyota Tacomas ("Tacoma Vehicles"),
>
> B. 2007 to 2008 Toyota Tundras ("Tundra Vehicles"),
>
> C. 2005 to 2008 Toyota Sequoias ("Sequoia Vehicles").

The above vehicles will collectively be referred to as the ("Toyota Vehicles"). Excessively

corroded frames pose a serious safety hazard to a vehicle's occupants because a vehicle's frame

forms the basis of a vehicle's crashworthiness, including its ability to withstand or minimize

damage to the occupant compartment in the event of an accident.

2. The Defendants have represented that its vehicles are crashworthy and sturdy throughout the

expected life of the vehicles and its customers expect vehicles to remain crashworthy and sturdy

throughout the vehicle's life. Contrary to this promise and expectation, the frames of the Toyota

4-Runner and the other Toyota Vehicles were designed, manufactured, and sold with inadequate

rust corrosion protection. As a result, the frames on the Toyota 4-Runner and the other Toyota

Vehicles are prone to excessive rust corrosion, which render the vehicles unstable and unsafe.

3. This condition is unrelated to and separate from normal surface rust, which is commonly

found on metallic surfaces after some years of usage and environmental exposure. A vehicle with

a sufficiently corroded frame is worthless unless the corroded frame is replaced.

4. The Defendants have long known the frames on the Toyota 4-Runner and the other Toyota

Vehicles are defective because they lack adequate rust corrosion protection. Despite this

knowledge, the Defendants failed to disclose the existence of the Toyota 4-Runner defect to the

Plaintiff, other Class members, and the public. Nor has it issued a recall to inspect and repair the

Toyota 4-Runner, or offered to reimburse owners of the Toyota 4-Runner for costs incurred to identify and repair this defect. The Defendants, in spite of actual knowledge of the defect and the potential danger of the defect, has intentionally withheld from the Toyota owners and the public, the important safety information.  In fact, in so doing, the Defendants have misled the public with its written guarantees in regards to the rust prevention measures taken by the Defendants and when the Defendants became aware of the problems, hid it from the public.

5. Instead the Defendants initiated non-publicized Limited Service Campaigns that provided inadequate relief for only some of the affected models in limited geographic areas. These campaigns only covered some of the vehicles and not others.  The Limited Service Campaigns continued to specifically mislead Toyota 4Runner owners because the owners of the vehicles not covered by the campaign were lead to believe their vehicles were not affected, when they were.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1332(d), because: (a) this action is brought as a proposed class action under Fed. R. Civ. P. 23; (b) the proposed Class includes more than 100 members; (c) many of the proposed Class members are citizens of states that are diverse from the Defendants citizenship; and (d) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

7. Additionally, this Court has jurisdiction over the Plaintiffs' claims pursuant to 28 U.S.C. §1331 because the Magnuson-Moss Warranty Act, 15 U.S.C. ¶ 2310, claim arises under a law of the United States.  In addition, this Court has supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this judicial District under 28 U.S.C. §1391(a) because a substantial part of the challenged conduct(sales) or omissions giving rise to claims occurred and/or emanated from this District and the Defendants have caused harm to Class members residing in this District.

## PARTIES

9. Plaintiff Gary Weinreich, ("Plaintiff"), is and was a citizen of the State of South Carolina. In 2005 Plaintiff purchased a brand new Toyota 4-Runner Sport. The frame has suffered significant rust corrosion requiring replacement. The Defendants have refused to replace the frame on Plaintiff's vehicle.

10. Defendant Toyota Motor Sales, U.S.A., Inc. is incorporated in the State of California and is headquartered in Torrance, California with its principal place of business at 19001 S. Western Avenue, Torrance, California 90501. Toyota Motor Sales, U.S.A., Inc., is responsible for U.S. sales, marketing and distribution for Toyota Motor Corporation. It may be served via its registered agent for service of process: CT Corporation Systems, 2 Office Park Court Suite 103 Columbia, South Carolina . It sells, markets, distributes, and services Toyota vehicles throughout the United States, including the Toyota 4-Runner and other Toyota Vehicles. Upon information and belief, at all relevant times, the Defendant transacted and conducted business in the State of South Carolina and derived substantial revenue from interstate commerce.

11. Toyota Motor Corporation, ("Toyota Motor"), is a Japanese Corporation, headquartered in Aichi, Japan with its principal place of business at 1 Toyota-cha, Toyota City, Aichi Prefecture 471-8571, Japan. Toyota Motor Corporation may be served via its registered agent for service of process: CT Corporation Systems, 2 Office Park Court Suite 103 Columbia, South Carolina 29223. Toyota Motor sells, markets, distributes, and/or services Toyota vehicles throughout the

United States, including the including the Toyota 4-Runner and other Toyota Vehicles.. Upon information and belief, at all relevant times the Defendant transacted and conducted business in the State of South Carolina and derived substantial revenue from interstate commerce.

12. Toyota Motor Engineering & Manufacturing North America, Inc. is a corporation incorporated under the laws of the State of Kentucky. Toyota Motor Engineering & Manufacturing North America, Inc. has its principal place of business at 25 Atlantic Avenue, Erlanger, Kentucky 41018. Service of process on Toyota Motor Engineering & Manufacturing North America, Inc. may be made by serving the registered agent for defendant, CT Corporation Systems, 2 Office Park Court Suite 103 Columbia, South Carolina   29223. Collectively Toyota Motor Sales U.S.A., Inc, Toyota Motor Corporation and Toyota Motor Engineering & Manufacturing North America, Inc.  will collectively be referred to as ("Toyota" or "Defendants").

## FACTUAL BACKGROUND

### EXCESSIVE RUST CORROSION AND PERFORATION RENDERS THE TOYOTA 4-RUNNER UNSAFE

13. A vehicle frame is the main supporting structure to which all other components are attached of a motor vehicle with a "body on frame" design. The function of frames include handling static and dynamic loads with unintended deflection and distortion, preventing undesirable forces and twisting from driving over uneven surfaces, engine torque, vehicle handling and accelerating and decelerating. Frames also are the primary component that guard against sudden impacts and collisions.

14. The Toyota 4-Runner and other Toyota Vehicles were manufactured with frames lacking adequate rust corrosion protection. As a result, the Toyota 4-Runner frames are prone to

experiencing severe premature rust corrosion, which affects the structural integrity of the vehicles, rendering them unsafe to drive and a hazard on the roadways.

15. Rust corrosion has a significant deleterious effect on metal items. It makes them weaker by replacing the strong iron or steel with flaky powder, ultimately leading to perforations. Rust corrosion is a progressive process. Once corrosion begins, it will not stop until adequately repaired.

16**.** The frames on the 2005-2011 Toyota 4Runner and the other Toyota Vehicles are materially the same for purposes of this lawsuit and suffer from the same defect. All of the frames were manufactured by the same corporation (Dana Holding Corporation) pursuant to the same defective process.

17. Because the damage is typically on the undercarriage of the Toyota 4Runner and other Toyota Vehicles it goes undetected unless purposefully inspected, for example, through a mandatory state safety inspection or otherwise.

18. Corrosion of the Toyota 4Runner is unrelated to and separate from normal surface rust experienced after years of usage and/or exposure to environmental conditions. The excessive rust corrosion on the Toyota 4Runner compromises the vehicles' safety, stability, and crash-worthiness because important suspension components, engine mounts, transmission mounts, and body mounts anchor to the vehicles' frames. It has also affected the value of the vehicles.

19. According to Popular Mechanics, "A rusted-through frame means the structural and crash integrity of the car is questionable, and it should be inspected and repaired by a qualified repair facility." *See* http://www.popularmechanics.com/cars/how-to/repair/how-to-fight-rust-and-win-14930616 (last visited October 5, 2016).

20. As described on AutoGuide.com, "excessive rust often signals the impending death of a vehicle. Its useful life [is] essentially over." Further: Frame rust is a big concern, as it affects the integrity of the car. Bad enough frame rust can cause parts to snap off or crack, which will really compromise the safety of you, your passengers and other motorists. It may also significantly diminish the car's ability to protect you in a crash. Sami Haj-Assaad, *Should You Buy a Car with Rust?*, AutoGuide.com (Feb. 24, 2014), available at http://www.autoguide.com/auto-news/2014/02/buy-car-rust.html (last visited October 5, 2016).

21. Excessive rust corrosion and perforation on the Toyota 4Runner also causes the vehicles to fail some state safety inspections. Once a vehicle fails state safety inspection, consumers cannot use their vehicle unless and until they spend time and money to remediate the rust and perforation.

### *Toyota Knew of the Defect and Failed to Protect Consumers*

22. Toyota represented and promised that it used the "most advanced technology available" to ensure the Toyota 4-Runner (and other Toyota Vehicles) were, at the least, equipped with reasonably corrosion-resistant parts. For example, Toyota made the following representation in the owner's manuals:

> *Toyota, through its diligent research, design and use of the most advanced technology available, helps prevent corrosion and provides you with the finest quality vehicle construction.*

23. Toyota has long been aware that frames on the Toyota 4Runner and other Toyota Vehicles exhibited excessive rust corrosion and perforation because they did not have adequate corrosion-resistant protection. Similar frames on other Toyota vehicles exhibited the same excessive rust corrosion and perforation. Further, Limited Service Campaigns initiated by Toyota to address this known defect for certain model year Toyota Tacomas, Toyota Tundras and  Toyota Sequoias

(Toyota Vehicles) were inadequate and failed to warn consumers about the extent and gravity of the defects. At that time, Toyota conceded that it had investigated "reports of 1995-2000 model year Tacoma vehicles exhibiting excessive rust corrosion to the frame causing perforation of the metal" and "determined that the vehicle frames in some vehicles may not have adequate corrosion-resistant protection." In a memorandum sent to dealers, distributors, and certain owners, Toyota emphasized that "[t]his [rust corrosion] is unrelated to and separate from normal surface rust which is commonly found on metallic surfaces after some years of usage." These vehicles had substantially the same defects as the Toyota 4Runners. Upon information and belief, Toyota has received numerous complaints of rust corrosion to the frames of the 2005-2011 Toyota 4Runners with substantially similar problems.

24. Toyota has long been aware that frames on the Toyota Vehicles and more particularly the Toyota 4Runners were exhibiting excessive rust corrosion because they were not manufactured correctly and were a serious safety hazard.

25. Although Toyota has known that the Toyota 4Runners suffer from excessive premature rust corrosion and that this is a safety-related defect, Toyota continues to mislead consumers and fails to adequately remedy the problem.  Toyota knew that the affected vehicles had a serious safety defect and failed to inform   the owners of the defect and the safety issues involved.

26. Toyota in an attempt to hide the defect from the public represented that those vehicles with rust problems were due to the cold client regions of the United States where "high" road salt was used. However, the excessive rust corrosion and perforation exhibited by the Toyota 4Runner in states throughout the country has little or nothing to do with road salt.

*Plaintiff's Experience with his Toyota 4-Runner*

27. On or about June 25, 2005 Plaintiff purchased a brand new Toyota 4-Runner Sport ("Toyota 4-Runner")  in Spartanburg, South Carolina.

28. Shortly thereafter, Plaintiff began routinely servicing his vehicle at the Toyota dealership in Myrtle Beach, South Carolina. Plaintiff ensured regular service appointments from 2005 until 2017.

29. On or about April 28, 2011 Plaintiff had an appointment at the Toyota Service Center in Myrtle Beach for a regular service check. It was at this time the mechanic made a note that there was severe and excessive amount of rust on the undercarriage and on the drive shaft transmission.

30. On or about October 21, 2013 Plaintiff had another appointment at the Toyota Service Center in Myrtle Beach for a regular service check. It was at this time the mechanic noted the undercarriage was very rusted, both splash shields, exhaust, and shocks were also rusted.

31. Plaintiff routinely serviced his vehicle and during this time he was assured his car was safe to drive by Toyota employees. No one at Toyota indicated there would be a structural or safety problem due to the rust.

32. On July 17, 2017, Plaintiff took his Toyota 4Runner to Meineke Car Care #1921 located at 12270 Highway 17 Bypass in Murrells Inlet, SC for rear brake replacement and an oil change.  The store owner and manger, Mr. Joseph Whalen, informed him that his vehicle had "excessive frame corrosion".  For the first time, however, the Plaintiff was informed that Toyota recently issued a Customer Support Program (CSP) for Toyota truck owners under which they

would inspect and replace frames experiencing severe corrosion. Mr. Whalen, however,

informed the Plaintiff that 4Runners were not included in the program, and could offer no

explanation as to the reason, but said Tacoma's, Sequoia's and Tundra's of the same general age

as his 4Runner were included.

33. On or about July 17, 2017 was the first date that the Plaintiff was aware of Toyota's

Customer Support Program addressing frame corrosion and the first time that he had notice that

his rust issue was not related to living at the beach or another cause.

34. On or about July 18, 2017, Plaintiff emailed Toyota using the Toyota Customer Experience

Center.  Plaintiff received no response. On or about September 12, 2017 Plaintiff sent a follow-

up with photographs at which time Toyota offered no assistance and said it was the owner's

responsibility.

35. On or about May 24, 2018 Plaintiff was driving his car, at highway speed, when the wheel

began vibrating violently causing him to loose control of the car and veer off the road.

36. Plaintiff's car was towed to a nearby garage who instructed him that his right front control

arm broke away from the frame due to severe corrosion and rust. The separation of the control

arm caused loss of control for the right front wheel and the vehicle. He declared the vehicle

unrepairable and inoperable.

37. At no time, prior to this incident was Plaintiff told there were any structural and/or safety

issues to his car.

38. On or about May 26, 2018 Plaintiff filed a complaint with NHTSA. At this time Toyota again

offered no assistance and said it was the owner's responsibility.

39. Plaintiff's car suffered premature and excessive corrosion just as the other Toyota Vehicles from this time period. Plaintiff's car had no body rust, has never been operated outside of South Carolina, and was otherwise in excellent condition.

40. Despite Toyota's knowledge of the premature and excessive corrosion issues of the Toyota Vehicles they failed to correct the problem.

41. Plaintiff reasonably and justifiably relied on the Defendants misrepresentations, promises, and/or warranties and was actually induced to purchase his Toyota 4Runner based upon these misrepresentations, promises, and/or warranties.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of a proposed class defined as:

> All persons, entities or organizations who, at any time as of the entry of the Preliminary Approval Order, own or owned, purchase(d)  2005-2011 Toyota 4Runner (Subject Vehicles) distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico and all other United States territories and possessions. Excluded from the Class are: (a) Toyota, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly excluded themselves from the Class.

43. Certification of Plaintiffs' claims for class wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The Class consists of more than one hundred thousand people. Therefore, the Class is so numerous that joinder of all members

would be impracticable. The sheer number of Class members makes joinder of all members

impracticable.

45. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and

23(b)(3).** This action involves common questions of law and fact that predominate over any

questions affecting individual Class members, including:

>a. whether the 2005-2011Toyota 4Runner Vehicles are defective;
>b. whether Toyota misrepresented the standard, quality, and characteristics of the
>Toyota Vehicles;
>c. whether Toyota's misrepresentations regarding the standard, quality and
>characteristics of the Toyota Vehicles were likely to mislead reasonable
>consumers;
>d. whether Toyota's omission that frames on the Toyota Vehicles lacked adequate
>rust corrosion protection was a material fact that a reasonable consumer would be
>expected to rely on when deciding whether to purchase a vehicle;
>e. whether Plaintiffs and the other Class members have been damaged and, if so,
>the extent of such damages; and
>f. whether Plaintiffs and the other Class members are entitled to equitable relief,
>including but not limited to, restitution and injunctive relief.

46. Toyota engaged in a common course of conduct giving rise to the legal rights sought to be

enforced by the Plaintiff individually and on behalf of the other Class members. Similar or

identical statutory and common law violations, business practices, and injuries are involved.

Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous

common questions that dominate this action.

47. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the

claims of the other Class members because, among other things, the Plaintiff and the other Class

members were injured through the substantially uniform misconduct described above. The

Plaintiff is advancing the same claims and legal theories on behalf of themselves and all other

Class members, and no defense is available to Toyota that is unique to any one Plaintiff.

48. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** The Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members. Additionally, the Plaintiff has retained counsel competent experienced in class action litigation. Thus, the Class's interests will be fairly and adequately protected by Plaintiff and their counsel.

49. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Toyota, making it impracticable for Class members to individually seek redress for Toyota's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

<u>FOR A FIRST CAUSE OF ACTION</u>
<u>BREACH OF IMPLIED WARRANTY</u>

50. Plaintiff hereby incorporates all previous allegations as if set forth verbatim.

51. The Uniform Commercial Code ¶2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for the sale if the seller is a merchant with respect to goods of that kind. To be "merchantable", goods must "run within the

variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved," "are adequately contained, packaged, and labeled as the agreement may require and "conform to the promise or affirmations of fact made."

52. The Defendants were merchants with respect to the goods which were sold to Plaintiff and the Class, and there was an implied warranty that those goods were merchantable.

53. The Defendants in its Owners' Manual represented that the vehicle purchased by the Plaintiff and all similarly situated Class Members that the Toyota 4 Runner had the following:

> ***Toyota, through its diligent research, design and use of the most advanced technology available, helps prevent corrosion and provides you with the finest quality vehicle construction***

54. The Defendants also provided Express Warranties that covered the defects alleged in this claim.

55. The Defendants warranted that the Toyota 4Runner was fit for a particular purpose. Toyota violated UCC provisions as well as South Carolina Code Section 36-2-314. A warranty that the Toyota Vehicles were in merchantable condition was implied by law in the instant transaction.

56. The Plaintiff and the other Class members purchased the Toyota 4-Runners that were manufactured and sold by Defendants in consumer transactions and reasonably relied upon the Defendants implied warranties in purchasing the Toyota 4-Runners. Defendants were and are in the business of selling vehicles and were and are a merchant of the Toyota 4-Runners.

57. The Toyota 4-Runners, when sold and at all times thereafter, were not in merchantable condition and were not fit for the ordinary purpose for which cars are used. The products did not contain the quality as impliedly warranted and did not conform to the promises made. The

Toyota 4-Runners left Defendant's possession and control equipped with defective frames that rendered them at all times thereafter un-merchantable, unfit for ordinary use, unsafe, and a threat to public safety.

58. The Plaintiff and the other Class members used their Toyota 4-Runners in the normal and ordinary manner for which the Toyota 4-Runners were designed and advertised.

59. Toyota knew or should have known, before the time of sale to the Plaintiff or earlier, that the Toyota 4-Runners were produced with defective frames that lacked adequate rust corrosion protection, rendering the Toyota Vehicles unfit for their ordinary purpose.

60. Despite Plaintiff's and the other Class members' normal and ordinary use, maintenance, and upkeep, the frames of the Toyota 4-Runners experienced an unusually rapid rate of rust corrosion, rust perforation, and structural degradation as a result of a manufacturing or design defect that existed at the time Defendant transferred the Toyota 4-Runners from its possession or control. The defect rendered the Toyota 4-Runners unfit for their ordinary use and incapable of performing the tasks they were designed, advertised, and sold to perform.

61. As a result, the Toyota 4-Runners frames are not of fair average quality. Nor would they pass without objection in the automotive industry. Excessive rust corrosion to a vehicle frame affects the stability of a vehicle, rendering the vehicle unsafe to drive and requiring substantial repairs or even replacement of the Vehicle's entire frame before safe, ordinary use can resume.

62. All conditions precedent have occurred or been performed.

63. Defendant has actual notice of its breach of warranty. Through consumer complaints and regulatory agencies' investigations, Defendant learned that the defect, the existence and ubiquity

of which it knew much earlier, has been the subject of publicized consumer disputes nationwide. Its implementation of the Limited Service Campaigns directed to the Toyota 4-Runners shows actual notice. Prior related lawsuits also establish that Defendant had actual notice of its breach of warranty.

64. Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendant knew or should have known when it first made these warranties and their limitations that the defect existed and that the warranties would expire before a reasonable consumer would notice or observe the defect. Defendant also failed to take necessary actions to adequately disclose or cure the defect after the existence of the defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the defect, its breaches of warranty, or otherwise attempt to resolve or address Plaintiff's and the other Class members' claims.

65. As a direct and foreseeable result of the defect in the Toyota 4-Runners frames, Plaintiff and the other Class members suffered diminution in the value of the Toyota Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Toyota Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

66. The Plaintiff and Class members have had sufficient direct dealings with either the Toyota or its agents (dealerships) to establish privity of contract between Plaintiff and the Class members.

Notwithstanding this, privity is not required in this case because Plaintiff and Class members are intended third-party beneficiaries of contracts between Toyota and its dealers; specifically, they are the intended beneficiaries of Toyota's implied warranties. The dealers were not intended to be the ultimate consumers of the Toyota 4-Runners; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiff and Class members' Toyotas are inherently dangerous due to the aforementioned defects and nonconformities.

67.  As a direct and proximate result of the Defendants' breach of the Implied Warranties, Plaintiff and Class members have been injured and damaged in **ACTUAL AND CONSEQUENTIAL DAMAGES.**

<u>**FOR A SECOND CAUSE OF ACTION**</u>
**BREACH OF EXPRESS WARRANTY**

68.  Plaintiff hereby incorporates all previous allegations as if set forth verbatim.

69. Toyota is and was at all relevant times a merchant with respect to motor vehicles.

70. When marketing, distributing, and selling the Toyota 4-Runners, Toyota expressly warranted that it provided 36 months or 36,000 miles of comprehensive coverage, whichever occurred first, during which time Toyota represented it would cover the cost of any repair or replacement necessary due to a defect in materials or workmanship relating to the Toyota Vehicles.

71. Defendant also represented and affirmed, contrary to facts, that it used the most advanced technology to help prevent corrosion on the Toyota 4-Runners. In actuality, Defendant failed to use adequate rust prevention techniques or materials in constructing the Toyota Vehicles. It has admitted that frames on the Toyota 4-Runners experience an unnatural and excessive degree of

rust corrosion. The rust corrosion is a result of a defect in the manufacture or design of the Toyota 4-Runners.

72. Defendants affirmations of fact and promises became part of the basis of the bargain between Defendant and Plaintiff and all Class members, thereby creating express warranties that the products would conform to Defendants affirmation of fact, representations promise, and description.

73. Toyota knew or should have known that the frames on the Toyota 4-Runners were defective at the time of sale. Indeed, Toyota was well aware of the frame rust corrosion problems on the Toyota 4-Runners. Defendant breached express warranties when Defendant delivered the Toyota 4-Runners that did not conform to its affirmations of fact and industry standards for truck frames and failed to inform the Plaintiff or the Class members of the defect.

74. Toyota breached the express warranty to repair the defects in the Toyota 4-Runners, because it failed to repair the inadequately coated frames on the Toyota 4-Runners to ensure such vehicles did not exhibit severe rust corrosion and perforation.

75. Despite Toyota's knowledge of the problem and opportunity to cure (as evidenced by the Limited Service Campaigns), Toyota failed to notify Plaintiff and the other members of the Class of the defect and to repair or replace, at no charge to the Class, the defective frames.

76. All conditions precedent have occurred or been performed.

77. Defendant had actual notice of its breaches of express warranty. Through consumer complaints and regulatory agencies' investigations Defendant learned that the defect, the existence and ubiquity of which it knew much earlier, was the subject of consumer disputes

nationwide. Its implementation of the Limited Service Campaigns directed at the Toyota 4-Runners shows actual notice. Prior related lawsuits also establish that Defendant had actual notice of its breach of warranty.

78. Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendant knew when it first made these warranties and their limitations that the defect existed and that the warranties would expire before a reasonable consumer would notice or observe the defect. Defendant also failed to take any actions to adequately disclose or cure the defect after the existence of the defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the defect, its breaches of warranty, or otherwise attempt to resolve or address Plaintiffs' and the other Class members' claims.

79. The Plaintiff and the other Class members were damaged as a result of Toyota's breach of express warranty because the frames on the Toyota 4-Runners are defective, compromising the stability and safety of the vehicles, and requiring repair and even replacement of the Vehicles' frames.

80. As a direct and foreseeable result of Defendant's failure to repair the Toyota 4-Runners' frames, Plaintiff and the other Class members suffered diminution in the value of the Toyota Vehicles, out-of-pocket losses related to the repairing, maintaining, and servicing their defective

Toyota 4-Runners, costs associated with arranging other forms of transportation, and other incidental and consequential damages recoverable under the law.

81.  As a direct and proximate result of the Defendants' breach of the Express Warranties, Plaintiff and Class members have been injured and damaged in **ACTUAL AND CONSEQUENTIAL DAMAGES.**

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS ACT**

82.  Plaintiff hereby incorporates all previous allegations as if set forth verbatim.

83. The Toyota 4-Runners are consumer products within the meaning of 15 U.S.C ¶ 2301 (1).

84. Plaintiff and Class Members are consumers within the meaning of 15 U.S.C ¶ 2301 (3).

85. The Defendants are the suppliers and warrantors within the meaning of 15 U.S.C ¶ 2301 (5).

86.  In connection with the sale of the Toyota 4-Runners the Defendants gave multiple warranties as defined in 15 U.S.C ¶ 2301 (6) as previously alleged.

87. In connection with the sale of the Toyota 4-Runners the Defendants gave multiple implied warranties as defined in 15 U.S.C ¶ 2301 (7) as previously alleged.

88. The Defendants breached these warranties.

89. Defendants, through their actions as stated herein, have violated 15USC 50,¶¶ 2301, et al, (Magnuson Moss Warranty Act) and as a direct and proximate result, Plaintiff and Class members are entitled to **ACTUAL AND  CONSEQUENTIAL DAMAGES**, together with **ATTORNEYS FEES AND COSTS**.

**FOR A FOURTH CAUSE OF ACTION**
**INJUNCTIVE RELIEF**

90. Plaintiff repeats and re-alleges all paragraphs as if fully set forth herein.

91. Pursuant to 28 U.S.C. §2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

92. Defendant marketed, distributed, and sold the Toyota 4-Runners equipped with frames prone to exhibiting excessive rust corrosion and perforation on account of Defendant's failure to treat the frames on such vehicles with adequate rust corrosion protection.

93. Accordingly, Plaintiff and Class Members seek entry of the following declarations: 2005-2011 Toyota 4Runner Vehicles, lack adequate rust corrosion protection and are defective; (2) all persons who purchased model years 2005 to 2011 Toyota 4Runner  Vehicles, are to be provided the best practicable notice of the defect, which cost shall be borne by Defendants; and (3) Defendants must establish an inspection, repair, and replacement program and protocol and notify Class members of such program, pursuant to which Defendants, including its authorized representatives, and at no cost to Class members, will inspect, upon request, Class members' Toyota Vehicles for frame rust corrosion, treat the Toyota Vehicles that have not exhibited rust corrosion with adequate rust corrosion protection, and to repair or replace the frames on the Toyota 4-Runners that have experienced frame rust corrosion.

## FOR A FIFTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENATION

94. Plaintiff hereby incorporates all previous allegations as if set forth verbatim.

95. As alleged herein, the Defendants misrepresented that "Toyota, through its diligent research, design and use of the most advanced technology available, helps prevent corrosion and provides you with the finest quality vehicle construction", when  in fact this was not accurate.

96. At the time the Defendants made these representations, the Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

97. At minimum, the Defendants negligently misrepresented and/or negligently omitted material facts about the Toyota 4-Runners.

98. The negligent misrepresentations and omissions made by the Defendants, upon which the Plaintiff and Class members reasonably and justifiably relied were intended to induce and actually induced, Plaintiff and all Class members to purchase the Toyota 4-Runners.

99. Plaintiff would not have purchased the Toyota 4-Runners on the same terms, if the truth has been known to them. Class members were likely also to have reasonably relied up the Defendants misrepresentations.

100. The negligent actions of the Defendant caused damage to the Plaintiff and all Class members, and as a direct and proximate result, Plaintiff and Class members are entitled to **ACTUAL AND  CONSEQUENTIAL DAMAGES.**

## <u>REQUESTS FOR RELIEF</u>

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter an Order:

a.  certifying the Class under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), as requested herein;
b. appointing Plaintiff as Class Representative  and undersigned counsel as Class Counsel;
c. finding that the Defendants engaged in the unlawful conduct as alleged herein;
d. awarding Plaintiff and the other Class members damages;
f. awarding Plaintiff and the other Class members declaratory and injunctive

relief;

g. requiring the Defendants to repair or replace the frames on the Toyota Vehicles;

i. awarding Plaintiff and the other Class members reasonable attorneys' fees, costs, and expenses; and

j. granting such other relief as the Court deems just and appropriate.

And for such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

**BELL LEGAL GROUP, LLC**

_s/ J. Edward Bell, III_
J. Edward Bell, III (Bar # 1280)
Gabrielle A. Sulpizio (Bar # 12715)
Bell Legal Group
219 Ridge Street
Georgetown, SC 29440
(843) 546-2408 Phone
(843) 546-9604 Fax
ebell@edbelllaw.com

**ATTORNEYS FOR PLAINTIFF**

December 6, 2018
Georgetown, South Carolina