**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Gary Weinreich and Robert O'Hara, individually and on behalf of all others similarly situated, | Civil Action No. 2:18-3294-RMG |
| Plaintiffs, | **ORDER AND OPINION** |
| v. | |
| Toyota Motor Sales, U.S.A., Inc., *et al*., | |
| Defendants. | |

Before the Court is Defendants' motion for summary judgment (Dkt. No. 261). For the reasons set forth below, the Court grants Defendants' motion.

**I.     Background**

This is a putative class action. Plaintiff Gary Weinreich alleges that in June 2005, he purchased a new, fourth generation Toyota 4Runner Sport and, when he took the car to be serviced at the Toyota Service Center in Myrtle Beach in 2011 and 2013, mechanics noted severe rust in the undercarriage including the transmission, although no resulting structural or safety problems were indicated. In 2017, service at a Meineke shop indicated excessive frame corrosion and Weinreich learned that Toyota had a customer support program for corrosion issues. In 2018, Weinreich lost control of the car when the wheel vibrated and, after being towed to a garage, it was determined that the right front control arm had broken away from the frame due to corrosion and rust. (Dkt. No. 1).

On October 31, 2019, the Court granted in part and denied in part Defendants' motion to dismiss the complaint. (Dkt. No. 28). The Court dismissed Plaintiff's negligent misrepresentation, negligence, and strict liability claims as barred by the economic loss rule. The Court also dismissed

Plaintiff's claim for injunctive relief. For the warranty claims, the Court found that the express warranties were "long-expired by 2018 and the implied warranties were disclaimed" after three years or 36,000 miles. (*Id.* at 7). The Court determined, nevertheless, that the complaint adequately alleged that the durational limits on Defendants' warranties could be potentially voided as "unconscionable" under South Carolina law. (*Id.* at 8). Following *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 292 (4th Cir. 1989), the Court ruled Plaintiff's warranty claims could proceed past the pleadings to determine whether, as a factual matter, "the Defendants knew, *at the time of sale*, that the defect existed and would not manifest until the warranty expired, and *that Toyota was on notice based on issues with the frames of prior car models*." (*Id.* at 8) (emphasis added). Accordingly, the parties proceeded to discovery on Plaintiff's warranty claims and the Magnuson-Moss Warranty Act ("MMWA").[1]

On June 17, 2022, Plaintiffs filed their Second Amended Complaint ("SAC"). (Dkt. No. 219).

On July 13, 2022, the Court granted Defendants' motion to strike certain paragraphs of the SAC which violated prior Court orders. (Dkt. No. 234 at 2). Accordingly, the Court struck paragraphs 1, 3, 5, 16, 18, 19, 26, 27, 80, 96, and 106. Plaintiffs were permitted to retain, however, Robert O'Hara as an additional named Plaintiff. Plaintiffs were not permitted, however, to add additional claims for relief. *See* (Dkt. No. 219 ¶ 11) (alleging O'Hara purchased his 4Runner in 2005).

---

[1] The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, provides a method for consumers to sue for violations of a written or implied warranty. While the Act has certain express requirements, it generally "calls for the application of state written and implied warranty law, not the creation of additional federal law." *Monticello v. Winnebago Industrials, Inc.*, 369 F. Supp. 2d 1350, 1356 (N.D. Ga. 2005). Accordingly, to the extent Plaintiffs' warranty claims succeed or fail, so to do Plaintiffs' MMWA claims.

Defendants now move for summary judgment. (Dkt. No. 261). Plaintiffs filed a response in opposition, (Dkt. No. 266), and Defendants filed a reply, (Dkt. No. 272).

Also before the Court are three motions to seal related to Defendants' motion. (Dkt. Nos. 262, 267, 273).[2]

Defendants' motion is fully briefed and ripe for disposition.

## II.   Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

---

[2] The Court has reviewed the parties' motions to seal and finds that they provide the notice and opportunity required by the governing law and applicable Local Rule. Further, having reviewed the documents in camera, and having weighed the public right of access against competing interests, the Court finds that sealing or redaction is warranted here. Accordingly, the pending motions to seal are **GRANTED.**

### III.    Discussion

As a preliminary matter, in opposition, Plaintiffs argue that the Court cannot entertain Defendants' motion until it holds a "Rule 302 hearing." (Dkt. No. 266 at 24). South Carolina Code Ann. § 36-2-302 states that when "it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

The Court rejects Plaintiffs' contention. Plaintiffs cite no case law for the proposition that § 302 requires a hearing. The text of § 302 guarantees only a "reasonable opportunity to present evidence," which Fed. R. Civ. P. 56's summary judgment procedure already permits. And, as described below, the Court finds that the evidence before it does not establish that the Defendants' warranties were unconscionable, further vitiating Plaintiffs' argument.

Accordingly, the Court considers Defendants' motion.

Whether a contract provision is unconscionable is a question of law to be determined by the court. § 36–2–302. Unconscionability is "the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Oakwood Products, Inc. v. SWK Technologies, Inc.*, No. 9:20-cv-04107-DCN, 2021 WL 5235224, at *7 (D.S.C. Nov. 10, 2021) (quoting *Carolina Care Plan, Inc. v. United Health Care Servs., Inc.*, 606 S.E.2d 752, 757 (S.C. 2004)). "Since South Carolina law attempts to 'give legal effect to the parties' intentions as determined by the contract language,' 'only in rare circumstances' should courts invalidate a contract on the basis of unconscionability." *Id.*

4

As the Court ruled in connection with Defendants' motion to dismiss, to challenge the durational limits to a vehicle warranty, Plaintiffs bear the burden to demonstrate unconscionability by showing that: (A) Defendants had notice of a defect at the time of Plaintiffs' purchases; (B) Defendants knew that the defect would manifest only after the warranty period; (C) the resulting contract presented Plaintiffs with "no meaningful choice;" and (D) the terms therefore "unreasonably favored Defendant." *See Carlson*, 883 F.2d at 292.

**a. Defendants Did Not Have Notice of a Defect at the Time of Plaintiffs' Purchases**

Defendants argue that Plaintiffs cannot demonstrate that Defendants had notice at the time of Plaintiffs' purchases in 2005 of defects with their fourth generation 4Runners. The Court addresses two of Defendants' arguments on this point: (1) that issues with "Dana Frame Vehicles" could not have provided notice of alleged issues with the fourth generation 4Runner and (2) that issues with the third generation 4Runner could not have provided notice of alleged issues with the fourth generation 4Runner.[3]

Defendants note that one of Plaintiff's theories—at least previously—is that Defendants were on notice of a defect in the frame of the fourth generation 4Runner "based on issues with the frames of previous car models." (Dkt. No. 28 at 8). Particularly, Plaintiffs argued that the frames of the fourth generation of 4Runners suffered inadequate corrosion protection in the same manner as certain model years of the Tacoma, Tundra, and Sequoia (the "Dana Frame Vehicles"). *See* (Dkt. No. 261 at 18); (Dkt. No. 1 ¶ 1). In their briefing, however, Defendants contend that issues with the Dana Frame Vehicles "could not possibly put [Defendants] on notice of a corrosion defect

---

[3] Plaintiffs' principal, if not sole, argument for opposing summary judgment is that Defendants had notice of corrosion issues with the fourth generation 4Runner because of alleged issues concerning the third generation. *See* (Dkt. No. 266 at 16-17, 19-21). Because it appears Plaintiffs may have argued previously that Dana Frame Vehicles provided Defendants notice of the defect alleged here, however, the Court analyzes the argument.

with the 4Runner because the frames were made by different suppliers on different production lines in different countries resulting in different levels of zinc phosphate coverage." (Dkt. No. 261 at 19).

The evidence before the Court bears this out.  The frames for the Dana Frame Vehicles were built in North America and, due to a process deficiency, lacked adequate zinc phosphate coverage, which resulted in premature corrosion. *See* (Dkt. No. 109) (explaining process deficiencies for Dana Frame Vehicles).  By contrast, Dana did not supply the frames for vehicles produced in Japan and imported into the U.S., such as Plaintiffs' 4Runners. (Dkt. No. 105-3 at 3) (noting 4Runner frames "built in Japan at Takebe (Hino) or Tahara (Toyota) Plants" and that "[n]o evidence exists indicating deficiencies in the frame coating process"); (Dkt. No. 261-6 at 16824-25) (NHTSA Notice rejecting Weinreich's defect petition for 4Runners, observing that the Dana issue did not affect the frames of imported vehicles, "[b]oth third and fourth-generation 4Runner Vehicles were built in Japan and are not equipped with frames manufactured by Dana"); (Dkt. No. 108 at 5) (internal testing documents showing zinc phosphate coating on certain Dana Frame Vehicles was inadequate); (Dkt. No. 261-3 at 144:5-145:9) (testifying quality control records for 4Runner produced in this case were within Defendants' zinc phosphate coverage specifications). Accordingly, as Defendants have established—and Plaintiffs have not challenged, *see generally* (Dkt. No. 266)—that the Dana Frame Vehicles "could not possibl[ly] put [Defendants] on notice of a corrosion defect with the 4Runner because the frames were made by different suppliers on different production lines in different countries resulting in different levels of zinc phosphate coverage," (Dkt. No. 261 at 19), the Court rejects Plaintiffs' theory that Dana Frame Vehicles

provided notice of any alleged defects as to the fourth generation 4Runner and grants Defendants summary judgment on this point.[4]

Defendants next argue that the third generation 4Runner could not have provided notice of defects in the fourth generation 4Runner in 2005. (Dkt. No. 261 at 22-24). Plaintiffs, on the other hand, argue "the 3rd generation 4Runners were known to have *substantially similar corrosion issues* on the rear lower control arm bracket, side rail, zero cross member, and front lower control arm bracket," (*Id.* at 23) (citing (Dkt. No. 95-1 at 7)); (Dkt. No. 266 at 16) (same), and that, therefore, when Plaintiffs bought their fourth generation 4Runners in 2005, Defendants were on notice of the alleged corrosion issues.

In their briefing, Defendants establish that by the end of 2005, they had received "zero corrosion complaints about third generation 4Runners" which "had been on the market since 1996." (Dkt. No. 261 at 24). Internal data produced by Defendants' Chassis Engineering Department further indicated, as of 2009, that the third generation achieved an average useful life of 11.8 years in salt belt states, whereas the same model year Tacoma frames had a minimum useful life of only 7.8 years. (Dkt. No. 112 at 15, 17). The same presentation also compared perforation rates and found that the highest occurrence for any model year Tacoma was 0.49%, whereas, for the 4Runner, it was *0.003%*. (*Id.* at 18). Defendants argue, and the Court further finds, that such de minimis figures for the third generation 4Runner cannot establish Defendants had notice of a defect. *See Roe v. Ford Motor Company*, Case No. 18-cv-12528, 2019 WL

---

[4] Even if it were logically possible that the Dana Frame Vehicles provided Defendants notice of a defect in the 4Runner, Defendants only became aware of issues with the Dana frames *after* Plaintiffs purchased their vehicles, rendering any such argument unpersuasive. *See* (Dkt. No. 219 at 4) (alleging Plaintiffs purchased their 4Runners in 2005). Specifically, Defendants only began to receive an increase in customer complaints regarding Dana Frame Vehicles in 2006. (Dkt. No. 261-10 at -745); (*Id.* at -746) (noting Defendants did not receive notice of actual frame failures, namely perforations in the frame caused by rust, until July 23, 2007).

7

3564589, at *7 (E.D. Mich. Aug. 6, 2019) (holding it unreasonable "to infer that Ford knew or should have known of the water-pump defect" where plaintiffs "identify 26 water-pump failures" and "[t]wenty-six out of 'millions' is a very low failure rate—approximately 1 in 100,000"); *Maloney v. Microsoft Corp.*, Civ. No. 09-2047, 2012 WL 715856, at *7 (D.N.J. Mar. 5, 2012) (holding a 1.3% product failure rate was too small for the court to support an inference of a design defect).

In opposing this finding, Plaintiff cite various documents which they contend show Defendants knew "about the corrosion defects, dating at least back to 1995." (Dkt. No. 266 at 19-21). Defendants correctly point out, however, (Dkt. No. 272 at 8-12), that only *one* of these documents was produced *before* 2005, the year Plaintiffs purchased their vehicles, (Dkt. No. 272-2 at 2) (dated chart listing exhibits cited by Plaintiffs in opposition) and that, therefore, the majority of Plaintiffs' evidence is irrelevant because it does not speak to what Defendants knew *at the time* Plaintiffs purchased their vehicles.[5] *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1148 (9th Cir. 2012) ("The two complaints that are dated were made over two years after Plaintiffs purchased the Laptops. Thus, as the District Court concluded, the complaints do not support an inference that HP was aware of the defect at the time it sold the Laptops to Plaintiffs."). The one document from the relevant time period is Plaintiffs' Exhibit 8, Bates 00024837 (filed under seal), which was created in 1995.

Exhibit 8 concerns *third* generation 4Runner pre-production testing. (Dkt. No. 272 at 8). This pre-production testing was designed to "implement 120 cy[cles] of the actual vehicle rust prevention performance test, excise the problem against the rust prevention target . . . and promote

---

[5] The Court has reviewed the post-2005 documents cited by Plaintiffs and further finds that none speak to Defendants' knowledge at the time of the sale of Plaintiffs' vehicles.

countermeasures against the target not achieved." The document concludes that "[p]roblems due to surface rust and erosion *were removed for both* [b]odies and parts, but countermeasures and countermeasure policies were determined for both." Despite this language indicating remedial measures *were* taken on third generation 4Runners, Plaintiffs conclude the document shows Defendants "chose to ignore the failures identified . . . and did not redesign or change any corrosion protection methods and improve corrosion protections before launch." (Dkt. No. 266 at 17). Plaintiffs cite no further admissible or relevant evidence—from or before 2005—to support this claim.

The Court rejects Plaintiffs' argument that their Exhibit 8 creates a dispute of material fact as to whether Defendants had notice, in 2005, of corrosion problems related to the fourth generation 4Runner. The purpose of pre-production testing is to "identify problems and promote countermeasures for parts that have not reached the target." (Dkt. No. 266 at 17); (Dkt. No. 272 at 9) (Pre-production testing provides "a process for identifying and remedying potential issues *before* production."). Exhibit 8 shows Defendants doing just that. *See* (Exhibit 8 at -24890) (identifying rusting on rear axle housing and noting countermeasures taken included "new normal dry-coating" and that the "evaluation result" had an "average erosion rate 61% **passed**") (emphasis added); (Dkt. No. 272 at 10) (noting "[p]re-production testing by definition does not identify issues in the production part. But pre-production results that *were actually remedied by a countermeasure* surely cannot provide such notice"). In sum, despite Plaintiffs' conclusory argument to the contrary, (Dkt. No. 266 at 17), Exhibit 8 does not provide evidence of defects present in third

9

generation 4Runners or, moreover, that Defendants knowingly carried over any such defects into fourth generation 4Runners.[6]

At bottom, Plaintiffs cannot establish that Defendants had notice of corrosion related issues pertaining to the fourth generation 4Runner at the time Plaintiffs purchased their vehicles. For this basis alone, Plaintiffs cannot establish unconscionability, and the Court grants Defendants summary judgment on Plaintiffs' claims.

**b. Plaintiffs Fail to Establish the Remaining Factors Necessary to Establish Unconscionability**

As the Court ruled in connection with Defendants' motion to dismiss, in the context of challenging the durational limits to a vehicle warranty, Plaintiffs bear the burden to demonstrate unconscionability by showing that: (A) Defendants had notice of a defect at the time of Plaintiffs' purchases; (B) Defendants knew that the defect would manifest only after the warranty period; (C) the resulting contract presented Plaintiffs with "no meaningful choice;" and (D) the terms therefore "unreasonably favored Defendant." *See Carlson*, 883 F.2d at 292. In addition to failing to establish notice, Plaintiffs fail to establish the remaining factors stated above.

As to element B, Plaintiffs must show that "the challenged 'durational limitations'" on the warranties "constituted 'overreaching'" because the company knew the defect would manifest after the warranties' expiration. *Carlson*, 883 F.2d at 296. That question, according to the Fourth Circuit, turns on whether Toyota "knew of and failed to disclose major, inherent product defects." *Id.*

---

[6] Plaintiffs' opposition relies heavily on the affidavit of their purported expert Robert A. Iezzi, Ph.D. The affidavit itself is based on the same exhibits discussed above—evidence which the Court has explained does not support Plaintiffs' case and is not, in most instances, even from the relevant time period. *See* (Dkt. No. 266 at 16).

10

For the reasons articulated above, Plaintiffs' claims fail on this point. Plaintiffs have adduced no evidence of a failure to disclose material information, much less a major, inherent product defect. *See, e.g.*, (Dkt. No. 261 at 25-26); (Dkt. No. 261-6 at 4-6) (NHTSA rejection of Weinreich's recall request finding that "ODI's analysis of consumer complaint data related to frame corrosion in fourth-generation Toyota 4Runner vehicles has not found evidence of a failure trend indicating a potential design or manufacturing defect leading to premature failures" and further finding that "corrosion-related suspension link failures in the subject 4Runner vehicles" follow "late-life patterns after well over 10 years of exposure to severe corrosion environments"); (Dkt. No. 261-11 at 27:5-19 and 189:11-16) (testifying Weinreich drove his 4Runner for roughly 13 years without incident and that Weinreich also used his vehicle to launch boats in sea water). As Defendants note, per Plaintiffs' arguments in this case, to meet *Carlson* Defendants would have had to disclose to Weinreich in 2005 that "if he exposed his vehicle to sea water regularly without fully rinsing it off or otherwise remediating the rust—even after being told by customer service agents to take it to a dealership—his 4Runner would enjoy 12 years of useful life before experiencing a rust-related perforation of the frame." (Dkt. No. 261 at 26) ("In Mr. O'Hara's case, Toyota would have needed to disclose that after 16 years of driving his 4Runner, it would experience no perforations, but only some surface level erosion rust on the frame."). To state the theory is to refute it. Defendants are entitled to summary judgment on prong B of *Carlson.*

Further, for similar if not identical factual reasons, Plaintiffs cannot establish element D of *Carlson*, that the terms of Defendants' warranty unreasonably favored Defendants. *Wingard v. Exxon Co., U.S.A.*, 819 F. Supp. 497, 499 (D.S.C. 1992) (In determining whether contract terms unreasonably favor one party, courts often consider whether the provisions are in any way "extreme and not in accordance with the business practices in the community."). As Defendants

note, identical warranties issued by Defendants and its competitors have been upheld repeatedly against unconscionability charges, *see, e.g.*, *Smith v. Ford Motor Co.*, 462 F. App'x 660, 663 (9th Cir. 2011) (finding three-year/36,000 mile warranty not unconscionable); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1181-82 (C.D. Cal. 2010) (finding three-year/36,000 mile warranty not unconscionable), and the facts here provide no reason for departing from such a finding, (Dkt. No. 261 at 29) ("Indeed, it is worth pausing to consider the implications of Plaintiffs' theory. Mr. Weinreich drove his 4Runner without any alleged corrosion-related incident for the entirety of the warranty period [three years] and then another nine years after that. For Plaintiffs' theory to make any sense, Toyota would need to warrant the 4Runner frame against corrosion for at least 13 years. Any shorter warranty would also need to be 'unconscionable,' or else it would have expired before Mr. Weinreich's alleged perforation anyway. (Mr. O'Hara's warranty would need to be at least 16 years and counting.) Few consumer products and no vehicles come with such a warranty, whereas three-year warranties routinely withstand judicial scrutiny.").

Nor can Plaintiffs establish they lacked meaningful choice. *See Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.,* 843 F. Supp. 1027, 1034 (D.S.C. 1993) (The Fourth Circuit has identified the following factors that bear on that question: "(1) the nature of the injuries suffered by the plaintiff; (2) whether the plaintiff is a substantial business concern; (3) disparity in the parties' bargaining power; (4) the parties' relative sophistication; (5) whether there is an element of surprise in the exclusion; and (6) the conspicuousness of the clause."). As Defendants note, regarding "surprise" and "conspicuousness," the challenged warranty was clearly identified in the warranty booklet, which itself used user-friendly graphics and bold type to highlight key provisions. (Dkt. No. 261 at 27).  Further, regarding the "nature of the injuries" suffered, they are

12

economic only. *See Myrtle Beach*, 843 F. Supp. at 1046-47 (holding that contractual limitations are disfavored only for personal injuries, not for property losses). As to the factors 2, 3, and 4, Plaintiffs do not dispute in their opposition that these factors also weigh in favor of Defendants. (Dkt. No. 261 at 26-28); (Dkt. No. 266) (failing to directly address said argument).

For the above reasons, Plaintiffs' warranty and MMWA claims fail as a matter of law, and Defendants are entitled to summary judgment.[7]

### III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (Dkt No. 261) is **GRANTED**. The parties' pending motions to seal are also **GRANTED** (Dkt. Nos. 262, 267, 273). The Clerk is directed to enter judgment for Defendants and close this action.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

January 11, 2023
Charleston, South Carolina

---

[7] Because Plaintiffs' claims fail for the fundamental reasons discussed *infra*, the Court need not address Defendants' additional arguments for summary judgment, namely that Weinreich's claims are barred by the applicable statute of limitations and that O'Hara has not put forth evidence that his warranty was even breached.

13